**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| Amanda Cerny, *et al.*, | Case No.: 2:21-cv-01243-GMN-BNW |
| Plaintiffs, | **REPORT AND RECOMMENDATION** |
| v. | |
| Canaima LLC d/b/a La Rumba Nightclub, | |
| Defendant. | |

Before the Court is Plaintiffs' Motion for Default Judgment. ECF No. 8. No response has been filed.

**I.   Procedural Background**

On July 1, 2021, Plaintiffs filed a complaint. ECF No. 1. Plaintiffs allege that they are professional models who earn their livelihood by selling their identity, image, and likeness for the purpose of advertising, endorsing, and promoting products and services. *Id.* at 4. Plaintiffs further allege that Defendant misappropriated Plaintiffs' images and likenesses by publishing altered photos of the Plaintiffs on several of their advertisements without notice, permission, or payment. *See* ECF No. 1.

Plaintiffs assert six causes of action against Defendant. *Id*. at 18–27. They allege that Defendant violated 15 U.S.C. § 1125 ("the Lanham Act") by creating false associations between Plaintiffs and Defendant. *Id.* at 18-19. They further allege that Defendant violated their right to publicity under NRS § 597.810 and that Defendant employed deceptive trade practices in violation of NRS § 598.0915. *Id.* at 19–24. Further, Plaintiffs assert causes of action for unfair competition and misappropriation, negligence, and unjust enrichment. *Id*. at 24–27. Plaintiffs seek a permanent injunction prohibiting Defendant from using Plaintiffs' images to promote the club. *Id.* at 28–29. They also request damages. *Id.*

A summons was issued to Defendant and returned as executed on July 23, 2021. ECF No. 5. Defendant did not answer or otherwise respond to Plaintiffs' complaint. Accordingly, on August 20, 2021, Plaintiffs moved for entry of a clerk's default. ECF No. 6. The clerk granted this request on September 10, 2021. ECF No. 7. Now, Plaintiffs move for default judgment against Defendant. ECF No. 8.

**II.   Jurisdiction**

The Court has subject matter jurisdiction over this case under 28 U.S.C. § 1331, as this case arises under the laws of the United States, namely the Lanham Act. The Court also has supplemental jurisdiction over Plaintiffs' related state law claims under 28 U.S.C. § 1367, as these claims are so related to the claims over which the Court has original jurisdiction that they form part of the same case or controversy.

The Court also has personal jurisdiction over Defendant because the Defendant is organized in Nevada and the conduct giving rise to this case occurred in Nevada. *See* ECF No. 1 at 3; *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (upon entry of default, all well-pled facts in the complaint are taken as true except those relating to the amount of damages).

**III.   Discussion**

    **A.   Legal Standard**

Under Federal Rule of Civil Procedure 55(b)(2), the court may enter default judgment if the clerk previously entered a default based on the defendant's failure to defend. After entry of a default, the factual allegations in the complaint are taken as true, except those relating to damages. *TeleVideo Sys.*, 826 F.2d at 917-18; Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Whether to grant a default judgment lies within the court's discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). In deciding whether to enter a default judgment, the court considers factors such as:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471–72. A default judgment generally is disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." *Id.* at 1472.

**B.    Analysis**

Here, the Court has discretion to enter a default judgment, as the clerk previously entered a default based on Defendant's failure to defend. *See* ECF No. 7. Accordingly, the Court considers the seven *Eitel* factors to determine if entering a default judgment is appropriate in this case.

*First,* the Court considers the possibility of prejudice to Plaintiffs. Plaintiffs would be prejudiced if they had to try this case rather than obtain a default judgment, as trial would require additional expenditure of human and financial resources. These expenses and efforts are unnecessary because the complaint alleged sufficient facts to demonstrate Defendant's unlawful conduct, those allegations are uncontested, and there is no other meaningful avenue for the Plaintiffs to seek relief. *See United States v. $150,990.00 in U.S. Currency*, No. 2-12-CV01014-JAD, 2014 WL 6065815, at *2 (D. Nev. Nov. 10, 2014) ("[T]he government would be prejudiced by having to expend additional resources litigating an action that appears to be uncontested. This factor favors default judgment."). Accordingly, the first factor cuts in favor of entering a default judgment.

*Second,* the Court considers the merits of Plaintiffs' substantive claim. Plaintiffs filed a detailed complaint describing Defendant's unlawful conduct. These allegations are uncontested and are now deemed admitted. *See* Fed. R. Civ. P. 8(b)(6). This factor cuts in favor of entering a default judgment.

*Third,* the Court considers the sufficiency of the complaint. As previously stated, the complaint is detailed. It sufficiently sets forth Plaintiffs' claims under the liberal pleading

standard of Rule 8 of the Federal Rules of Civil Procedure. This factor cuts in favor of entering a default judgment.

*Fourth,* the Court considers the sum of money at stake in the action. Plaintiffs seek a total of $400,000. ECF No. 16 at 3. This is not a small sum, but those who engage in false or misleading advertising using other people's images and likenesses can profit enormously from their conduct (and it can be damaging to the people whose images are used). Accordingly, this factor neither cuts for nor against entering a default judgment.

*Fifth,* the Court considers the possibility of a dispute concerning material facts. Currently, there is no dispute over any material facts. And given Defendant's failure to participate in this case, a dispute over any material facts is unlikely. This factor cuts in favor of entering a default judgment.

*Sixth,* the Court considers whether the default was due to excusable neglect. There is no evidence that Defendant's default is due to excusable neglect. Despite being served with process, Defendant has not responded for over a year. *See* ECF No. 5. This factor cuts in favor of entering default judgment.

*Seventh,* the Court considers the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. While the Federal Rules favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits. As Rule 55 indicates, one such instance is when a party fails to defend against an action. Thus, the preference to decide cases on the merits does not preclude a court from entering a default judgment. *Kloepping v. Fireman's Fund, No. C 94-2684* TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996). While cases should be decided on the merits when possible, given Defendant's failure to participate in this case, a decision on the merits is "impractical, if not impossible." *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002.). Accordingly, this factor cuts in favor of granting a default judgment.

Considering all the *Eitel* factors, the Court finds, in its discretion, that entering a default judgment in this case is appropriate.

**C.     Relief Requested**

As previously noted, Plaintiffs seeks a permanent injunction and damages. The Court will analyze the propriety of each form of relief requested.

**1.     Permanent Injunction**

Plaintiffs seeks a permanent injunction enjoining Defendant from using their images to promote Defendant. ECF No. 1 at 28; ECF No. 8 at 10–13. "[A] permanent injunction may be entered where the Plaintiffs shows: '(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the plaintiffs and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.'" *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014). Injunctive relief is almost always appropriate in trademark and unfair competition cases, "since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

Here, the Court finds that a permanent injunction is appropriate. First, Plaintiffs have suffered and will continue to suffer irreparable injury without a permanent injunction. Second, remedies at law (including monetary damages) are inadequate to compensate Plaintiffs for the ongoing damage they will suffer if the misappropriation of their images is allowed to continue. Third, considering the balance of the hardships between Plaintiffs and Defendant, a permanent injunction is still warranted. The Defendant has no right to infringe on Plaintiffs' image and likenesses. Fourth, the public interest is not disserved by a permanent injunction. To the contrary, the public will be served by a permanent injunction that prevents consumer confusion about Plaintiffs' affiliation with or endorsement of Defendant. Accordingly, a permanent injunction that prohibits Defendant from continuing to misappropriate Plaintiffs' image is warranted.

How broad this permanent injunction should be is different question. Federal Rule of Civil Procedure 65(d)(1) provides that every injunction must contain: the reasons why it was

issued, its specific terms, and the acts restrained. Rule 65(d)(2) provides that only the following people or entities who receive actual notice of the order by personal service or otherwise can be bound by it: parties, parties' officers, agents, servants, employees, attorneys, and others who are in active concert or participation with the aforementioned.

Having considered Plaintiffs' request for an injunction and the law, the Court recommends the following permanent injunction: Defendant Canaima LLC d/b/a La Rumba Nightclub, and all its officers, agents, servants, employees, attorneys, and all others who are in active concert or participation with the aforementioned are permanently enjoined from using in commerce (including distributing, promoting, advertising, and/or displaying) any image, photo, or likeness of Plaintiffs likely to cause confusion about whether Plaintiffs previously or currently work, promote, endorse, or are affiliated with Defendant.

The Court notes that Defendant previously misappropriated Plaintiffs' images or likenesses in their social media posts including but not necessarily limited to the following:

1. Social media posts misappropriating Amanda Cerny's image or likeness on
    i. December 24 and 26, 2020 (ECF No. 1 at 5);
2. Social media posts misappropriating Carissa Rosario's image or likeness on
    i. October 24, 2020 (*Id.* at 6);
3. Social media posts misappropriating Claudia Sampedro's image or likeness on
    i. January 14, 2019; February 28, 2021; March 14, 2021; April 18, 2021; and May 2, 2021 (*Id.* at 7);
4. Social media posts misappropriating Jessica Hinton's image or likeness on
    i. October 15, 2018 (*Id.* at 8);
5. Social media posts misappropriating Lina Posada's image or likeness on
    i. October 28, 2020 (*Id.* at 9);
6. Social media posts misappropriating Monica Leigh Burkhardt's image or likeness on
    i. November 27, 2020 (*Id.* at 10);
7. Social media posts misappropriating Rosa Acosta's image or likeness on
    i. November 4, 2019 and January 4, 2020 (*Id.* at 11);
8. Social media posts misappropriating Sandra Valencia's image or likeness on
    i. April 1, 2021 (*Id.*).

As part of the Court's permanent injunction, these posts must be taken down.

### 2. Damages

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In Plaintiffs' complaint, they requested damages of not less than $75,000. ECF No. 10 at 19, 22, 24, 25.

In connection with their motion for default judgment, Plaintiffs request $400,000 in actual damages. *See* ECF No. 16. Plaintiffs included a sworn declaration of an expert in the modeling and talent industry, Stephen Chamberlin. *See* ECF No. 16-1. Mr. Chamberlin opined on the fair market value of each Plaintiff's image that was appropriated by the Defendant based on several factors related to how the talent industry is priced. *See id.* After considering the relevant factors, Mr. Chamberlin opined that each Plaintiff suffered the following damages:

1. Amanda Cerny - $150,000 (*id.* at 6);
2. Carissa Rosario - $20,000 (*id.* at 6-7);[1]
3. Claudia Sampedro - $80,000 (*id.* at 7-8);
4. Jessica Hinton - $60,000 (*id.* at 8-9);
5. Lina Posada - $15,000 (*id.* at 9);
6. Monica Leigh Burkhardt - $20,000 (*id.* at 10);
7. Rosa Acosta – $40,000 (*id.* at 10-11);
8. Sandra Valencia – $15,000 (*id.* at 11-12).[2]

Mr. Chamberlin calculated Plaintiffs' total damages to be $400,000. *Id.* at 12.

The Court finds that Plaintiffs have sufficiently proven they suffered these damages. Plaintiffs allege that they are well-known professional models who earn their livelihood modeling and selling their identity, image, and likeness to companies, magazines, and individuals for the purpose of advertising, endorsing, or promoting products and services. ECF No. 1 at 4. Plaintiffs further allege that Defendant misappropriated Plaintiffs' image and likenesses by repeatedly publishing them in misleading and deceptive manners. *Id.* Defendant did this to make it appear like Plaintiffs worked at, promoted, or endorsed Defendant. *Id.* at 12.

---

[1] Mr. Chamberlin's declaration appears to contain a typo, wherein he refers to Ms. Rosario as "Campos." *See id.* at 6–7.

[2] Mr. Chamberlin's declaration appears to contain a typo, wherein he refers to Ms. Valencia as "Acosta." *See id.* at 11–12.

None of the Plaintiffs consented to Defendant using their images. *Id.* And Plaintiffs have not received any payment for Defendant's use of their images. *Id.* at 13. These allegations are all deemed true. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) ("[A]ll factual allegations in the complaint are deemed true."). Based on these facts and the expert opinion of Mr. Chamberlin, the Court finds it is just to award Plaintiffs $400,000 in actual damages.

## IV. Conclusion and Recommendation

**IT IS THEREFORE RECOMMENDED** that Plaintiffs' motion for default judgment (ECF No. 8) be GRANTED.

**IT IS FURTHER RECOMMENDED** that default judgment be entered in favor of Plaintiffs and against Defendant Canaima LLC d/b/a La Rumba Nightclub.

**IT IS FURTHER RECOMMENDED** that Defendant Canaima LLC d/b/a La Rumba Nightclub, and all its officers, agents, servants, employees, attorneys, and all others who are in active concert or participation with the aforementioned be permanently enjoined from using in commerce (including distributing, promoting, advertising, and/or displaying) any image, photo, or likeness of Plaintiffs likely to cause confusion about whether Plaintiffs previously or currently work, promote, endorse, or are affiliated with Defendant.

The Court notes that Defendant previously misappropriated Plaintiffs' images or likenesses in their social media posts, including but not necessarily limited to the following:

1. Social media posts misappropriating Amanda Cerny's image or likeness on
    i. December 24 and 26, 2020
2. Social media posts misappropriating Carissa Rosario's image or likeness on
    i. October 24, 2020
3. Social media posts misappropriating Claudia Sampedro's image or likeness on
    i. January 14, 2019; February 28, 2021; March 14, 2021; April 18, 2021; and May 2, 2021
4. Social media posts misappropriating Jessica Hinton's image or likeness on
    i. October 15, 2018
5. Social media posts misappropriating Lina Posada's image or likeness on
    i. October 28, 2020
6. Social media posts misappropriating Monica Leigh Burkhardt's image or likeness on
    i. November 27, 2020

7. Social media posts misappropriating Rosa Acosta's image or likeness on
    i. November 4, 2019 and January 4, 2020
8. Social media posts misappropriating Sandra Valencia's image or likeness on
    i. April 1, 2021

As part of the Court's permanent injunction, these posts must be taken down.

**IT IS FURTHER RECOMMENDED** that Defendant be ordered to pay Plaintiffs $400,000 in actual damages as follows:

1. Amanda Cerny shall receive $150,000.
2. Carissa Rosario shall receive $20,000.
3. Claudia Sampedro shall receive $80,000.
4. Jessica Hinton shall receive $60,000.
5. Lina Posada shall receive $15,000.
6. Monica Leigh Burkhardt shall receive $20,000.
7. Rosa Acosta shall receive $40,000.
8. Sandra Valencia shall receive $15,000.

## V.   Notice

This report and recommendation is submitted to the United States District Judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: August 11, 2022.

_____
Brenda Weksler
United States Magistrate Judge